IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| TERRENCE L. MILLER, #K61958, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 25-cv-01328-SMY |
| | ) |
| JEREMIAH BROWN, | ) |
| CARRISA LUKING, | ) |
| JANE/JOHN DOE 1 (Head, Mental Health), | ) |
| JANE/JOHN DOE 2 (Head, Psych. Dept.), | ) |
| DR. COLE, | ) |
| JANE/JOHN DOE 3 (Mental Health Asst.), | ) |
| JANE/JOHN DOE 4 (Mental Health Asst.), | ) |
| and DR. WEISMAN, | ) |
| | ) |
| Defendants. | ) |

# MEMORANDUM AND ORDER

**YANDLE, Chief Judge:**

Plaintiff Terrence L. Miller, an inmate of the Illinois Department of Corrections ("IDOC") currently incarcerated at Lawrence Correctional Center, filed the instant lawsuit pursuant to 42 U.S.C. § 1983 for alleged deprivations of his constitutional rights. He claims he was denied out-of-cell exercise and mental health treatment, and that medical attention for serious physical conditions was delayed in violation of his constitutional rights (Doc. 1, pp. 35-46). Plaintiff seeks monetary damages. *Id.*

This case is now before the Court for preliminary review of the Complaint under 28 U.S.C. § 1915A, which requires the Court to screen prisoner Complaints to filter out nonmeritorious claims. 28 U.S.C. § 1915A(a). Any portion of the Complaint that is legally frivolous, malicious, fails to state a claim for relief, or requests money damages from an immune defendant must be dismissed. 28 U.S.C. § 1915A(b).

1

## The Complaint

Plaintiff makes the following allegations in the Complaint (Doc. 1): From March 29, 2024 through May 28, 2024, and again from October 29, 2024 forward, Plaintiff was housed on protective custody wings at Lawrence (A-Wing and C-Wing in 6-House) (Doc. 1, pp. 35-36). Under Warden Jeremiah Brown's policy for those wings, he was not allowed any out-of-cell exercise during those times. Plaintiff suffered from neck stiffness, Charlie horses in his legs, nosebleeds, lower back pain, and muscle weakness. For about five months of this period, Plaintiff had a walker assistive device, but his cell was too small for him to walk back and forth with the walker. Warden Brown did not respond to Plaintiff's letters of complaint and denied Plaintiff's grievances over the lack of exercise. As of June 21, 2025, Plaintiff endured nearly eight months without any out-of-cell exercise in addition to the earlier two months. He suffered from depression, anxiety, and insomnia as a result (Doc. 1, p. 36; Doc. 10).

In May 2024, Plaintiff began writing to Lawrence's Mental Health Department and Psych Department (Jane/John Does #1 and #2) seeking treatment for his depression, anxiety, and lack of sleep (Doc. 1, p. 36). He spoke personally about his needs to the Defendant Mental Health Assistants (Jane/John Does #3 and #4) who visited his cell weekly for three to four minutes. Those providers advised Plaintiff to keep writing to the Psych Department. Between May 2024 and March 2025, he wrote five letters to the Mental Health/Psych Departments and filed a grievance, but was not seen by a doctor during that approximate ten-month period. Plaintiff's mental health continued to suffer.

In January 2024, Plaintiff wrote several letters to the Health Care Unit requesting treatment for extreme pain in his left hip and leg and asking for a cane to help him walk (Doc. 1, p. 36). While previously housed at Western Illinois Correctional Center, Plaintiff had a doctor's permit

for a cane and was diagnosed with degenerative hip disease. Plaintiff saw Defendant Luking (Nurse Practitioner) on February 1, 2024, who told him he could not have a cane at Lawrence (Doc. 1, p. 37). Luking acknowledged his condition was urgent. Plaintiff underwent an x-ray showing possible osteoarthritis and an MRI showing "bone-on-bone abutment." *Id*. In May 2024, Plaintiff's hip started giving out, causing falls. One fall injured his right shoulder. Plaintiff continued writing letters to Luking complaining of his chronic and extreme pain, but did not receive a walker until August 2024.

Plaintiff put in sick calls in May 2024 for his repeated falls when his left leg gave out (Doc. 1, p. 37). Plaintiff injured his right shoulder when he fell and hit a concrete wall. Luking ordered an x-ray.[1] Plaintiff continued to suffer pain from the injured shoulder. He wrote multiple letters to Luking seeking treatment and saw her on July 8, 2024 and September 16, 2024 (Doc. 1, p. 38).

Plaintiff also wrote Defendant Dr. Weisman (Lawrence physician) in October and November 2024 without any response. Plaintiff was finally sent to Carle Hospital for an MRI on December 30, 2024, which revealed multiple tears in his right shoulder and arm. Plaintiff wrote Defendant Dr. Cole (Lawrence physician) in February and March 2025 seeking treatment for the shoulder pain but got no response until seeing Dr. Cole on June 6, 2025. Dr. Cole prescribed tramadol on that date, but as of June 21, 2025, Plaintiff had not received pain medication.

Plaintiff seeks compensatory, nominal, and punitive damages (Doc. 1, pp. 45-46).

Based on the allegations in the Complaint, the Court designates the following claims in this *pro se* action:

Count 1: Eighth Amendment cruel and unusual punishment claim against Jeremiah Brown for denying Plaintiff all out-of-cell exercise from March 29, 2024 through May 28, 2024, and from October 29, 2024 until at least June 21, 2025.

---

[1] The top of page 38 of the Complaint is cut off and unreadable as to the results of this x-ray.

> Count 2: Eighth Amendment claim for deliberate indifference to serious mental health needs against Defendants Jane/John Doe #1 (Head of Lawrence Mental Health Department), Jane/John Doe #2 (Head of Lawrence Psychology/Psychiatry Department), and Jane/John Doe Mental Health Assistants #3 and #4, for denying Plaintiff treatment for his depression, anxiety, and insomnia for about ten months starting in May 2024.
>
> Count 3: Eighth Amendment claim for deliberate indifference to serious medical needs against Luking for failing to timely provide Plaintiff with an assistive device for his degenerative left hip/leg condition to help him walk and prevent falls, from January 2024 to August 2024.
>
> Count 4: Eighth Amendment claim for deliberate indifference to serious medical needs against Luking, Weisman, and Cole for denying/delaying treatment for Plaintiff's serious, painful right shoulder injury during 2024 and 2025.

Any other claim that is mentioned in the Complaint but not addressed in this Order should be considered dismissed without prejudice as inadequately pled under the *Twombly* pleading standard. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (an action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim that is plausible on its face.").

## **Severance of Claims**

Rule 20 of the Federal Rules of Civil Procedure prohibits a plaintiff from asserting unrelated claims against different defendants or sets of defendants in the same lawsuit. Under Rule 20, multiple defendants may not be joined in a single action unless the plaintiff asserts at least one claim to relief against each defendant that arises out of the same transaction or occurrence or series of transactions or occurrences and presents a question of law or fact common to all. *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007); 3A *Moore's Federal Practice* § 20.06, at 2036-45 (2d ed. 1978).

Here, Plaintiff's claim in Count 1 is against Brown for prohibiting Plaintiff's access to

exercise outside his cell. Count 2 arose from the denial of mental health services by the Jane/John Doe mental health providers. While these claims involve distinct defendants, Count 2 arguably involves the same transaction/occurrence as Count 1 because Plaintiff alleges his mental health symptoms/conditions occurred during and were aggravated by his long confinement in the segregation cells without adequate out-of-cell time. Additionally, Defendant Brown in his official capacity is the proper party to provide Plaintiff with the identities of the Jane/John Doe Defendants. Therefore, Counts 1 and 2 will be permitted to proceed together at this juncture.

Count 3 is against Luking for deliberate indifference to Plaintiff's hip and leg conditions. Count 4 is also against Luking and medical providers Weisman and Cole regarding Plaintiff's shoulder injury. The claims in Counts 3 and 4 arose from transactions and occurrences that are distinct from those in Counts 1 and 2. The two sets of claims (Counts 1-2 and Counts 3-4) have no questions of law or fact in common. Counts 3 and 4 may properly proceed together in the same action because Luking is named in both claims. However, Counts 3 and 4 involve different defendants from Counts 1 and 2 and are not properly joined with Counts 1 or 2 under Rule 20.

For these reasons, the Court will sever the improperly joined claims in Counts 3-4 into a separate lawsuit. *See* FED. R. CIV. P. 18, 20, and 21. *See also Owens v. Godinez*, 860 F.3d 434, 436 (7th Cir. 2017) (district courts should not allow inmates to combine multiple lawsuits into a single complaint). Counts 1 and 2 will remain in the present case. Plaintiff will have the opportunity to voluntarily dismiss the severed case consisting of the claims in Counts 3 and 4 if he does not wish to pursue it.

## Discussion

### Count 1

Prison conditions that deprive inmates of basic human needs – food, medical care,

sanitation, or physical safety – may violate the Eighth Amendment. *Rhodes v. Chapman*, 452 U.S. 337, 346-47 (1981). To state an Eighth Amendment claim for unconstitutional conditions of confinement, Plaintiff must plead facts suggesting he was denied "the minimal civilized measure of life's necessities," creating an excessive risk to his health or safety. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). He must also sufficiently plead that the defendant exhibited deliberate indifference to a substantial risk of serious harm to the inmate, despite the defendant's knowledge of the bad conditions. *Farmer*, 511 U.S. at 837, 842. A prolonged denial of exercise opportunities may amount to an Eighth Amendment violation. *See Turley v. Rednour*, 729 F.3d 645, 652-53 (7th Cir. 2013); *Delaney v. DeTella*, 256 F.3d 679, 683-84 (7th Cir. 2001).

Here, Plaintiff alleges an objectively serious deprivation. He claims he had no opportunity for out-of-cell exercise for a total of at least ten months, causing or aggravating several painful physical symptoms and depression, anxiety, and insomnia. He alleges that when he acquired a walker to assist his mobility, his ability to walk inside the cell was more restricted because of the cell's small size. He also claims he informed Defendant Brown of the problem but Brown took no action. These factual allegations are sufficient for Plaintiff's Eighth Amendment claim in Count 1 to proceed against Brown in his individual capacity.

**Count 2**

Prison medical/mental health staff violate the Eighth Amendment's prohibition against cruel and unusual punishment when they act with deliberate indifference to a prisoner's serious medical or mental health needs. *Rasho v. Elyea*, 856 F.3d 469, 475 (7th Cir. 2017); *Sanville v. McCaughtry*, 266 F.3d 724, 734 (7th Cir. 2001). To state such a claim, a prisoner must plead facts and allegations suggesting (1) he suffered from an objectively serious medical or mental health condition, and (2) the defendant acted with deliberate indifference to his medical/mental health

needs. *Id.*

Plaintiff alleges he personally informed the Jane/John Doe Mental Health Assistants #3 and #4 who came to his segregation cell on a regular basis that he was suffering from depression, anxiety, and insomnia and needed treatment. He further claims to have written many letters to Jane/John Doe #1 (Head of Lawrence Mental Health Department) and Jane/John Doe #2 (Head of Lawrence Psychology/Psychiatry Department). Plaintiff alleges that despite these requests, he received no mental health treatment for approximately ten months. These allegations are sufficient to state a viable claim in Count 2 against the Jane/John Doe Defendants #1-#4. However, Plaintiff must identify these individuals by name before the claim may proceed against them.

### Unknown/John/Jane Doe Defendants

Plaintiff is responsible for securing information aimed at identifying the Unknown/Jane/John Doe Defendants #1-#4, in accordance with the John/Jane Doe Identification Order that will be entered separately. Once the names of the unknown defendants are obtained, Plaintiff must file a motion to substitute the newly identified defendants in place of the generic designations in the case caption and throughout the Complaint. Lawrence Warden Jeremiah Brown, in his official capacity, is designated to respond to Plaintiff's requests for information regarding the identity of the Unknown Defendants.

### Pending Motion

Plaintiff's Motion Requesting Permission to Add Documents to his Complaint (Doc. 10) is **GRANTED**. Plaintiff's exhibits, consisting of three letters directed to Defendant Brown regarding the denial of exercise, have been considered as part of the record.

### Disposition

Counts 3 and 4 against Carrisa Luking, Dr. Weisman, and Dr. Cole are **SEVERED** into a

new case. In the new case, the Clerk is **DIRECTED** to file the following documents:

- This Memorandum and Order;
- The Complaint (Doc. 1); and
- Plaintiff's motion to proceed IFP (Doc. 2).

Plaintiff shall have the option to proceed on the severed Counts 3 and 4 or to dismiss the case without prejudice and before he is required to pay a fee. Accordingly, Counts 3 and 4, and Defendants Luking, Weisman, and Cole, are **DISMISSED** from *this* case with prejudice.

The Complaint states colorable claims in Count 1 against Jeremiah Brown (individual capacity), and in Count 2 against Jane/John Doe #1 (Head of Lawrence Mental Health Department), Jane/John Doe #2 (Head of Lawrence Psychology/Psychiatry Department), and Jane/John Doe Mental Health Assistants #3 and #4.

The Clerk shall prepare for Jeremiah Brown (individual and official capacity): (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint, and this Memorandum and Order to Defendant's place of employment as identified by Plaintiff. If Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on the Defendant, and the Court will require the Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If Defendant cannot be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the

Clerk and shall not be maintained in the court file or disclosed by the Clerk.

Defendant is **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g). **Pursuant to Administrative Order No. 244 and Local Rule 8.2, Defendants need only respond to the issues stated in this Merit Review Order**.

Plaintiff is **ADVISED** that if judgment is rendered against him and the judgment includes the payment of costs under 28 U.S.C. §1915, he will be required to pay the full amount of the costs, even though his application to proceed *in forma pauperis* was granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is further **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and the opposing parties informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **14 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

Finally, based on the allegations in the Complaint, the Clerk of Court is **DIRECTED** to **ENTER** the standard qualified protective order pursuant to the Health Insurance Portability and Accountability Act.

**IT IS SO ORDERED.**

DATED:  February 24, 2026

*s/ Staci M. Yandle*
**STACI M. YANDLE**
**Chief U.S. District Judge**

**Notice to Plaintiff**

The Court will take the necessary steps to notify the Defendants of your lawsuit and serve them with a copy of your Complaint. After service has been achieved, Defendants will enter an appearance and file an Answer to your Complaint. It will likely take at least **60 days** from the date of this Order to receive the Defendants' Answer, but it is entirely possible that it will take **90 days** or more. When Defendants have filed their Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for Defendants before filing any motions, to give the Defendants notice and an opportunity to respond to those motions. Motions filed before Defendants' counsel has filed an appearance will generally be denied as premature. Plaintiff need not submit any evidence to the Court at this time, unless specifically directed to do so.